**Eibtisam OSMAN; Hadeel Ibrahim, Petitioners,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

No. 02–3735.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Dec. 20, 2002.

Decided Jan. 15, 2003.

Before SLOVITER, McKEE, and ROSENN, Circuit Judges.

OPINION OF THE COURT

ROSENN, Circuit Judge.

Petitioner Eibtisam Osman (Osman), a 38–year–old native and citizen of Sudan,

arrived in the United States on September 30, 2001, and sought asylum here based on her fear of persecution in Sudan. Osman lived in Saudi Arabia for an eighteen-year period preceding her arrival in the United States as a temporary resident by virtue of her husband's status as a guest worker in that country. However, as her husband's work status expired, she and her four children faced the prospect of returning to her native Sudan on a permanent basis. Rather than return to Sudan, she traveled to the United States and sought asylum here. An Immigration Judge ("IJ") denied her applications and found her removable. After an unsuccessful appeal to the Board of Immigration Appeals ("BIA"), Osman was deported to Sudan. She now seeks review of the BIA order of deportation. We affirm.[1]

## I.

At her immigration hearing, Osman testified to the following. In 1998, while living in Saudi Arabia, she joined the Sudan Federal Democratic Alliance ("SFDA"), a political organization opposed to the current policies of the Sudanese government. Since 1989, she returned to her home country on three occasions, in 1991, 1995 and 2000. The first two occasions preceded her affiliation with the SFDA and involved brief stays with no unusual incidents. On the most recent occasion, in 2000, after she had joined the SFDA, Osman, on returning home to visit her sick father, was detained at the airport by security officers upon her arrival. She was asked whether she was a member of SFDA; she admitted she was a treasurer in the organization. She was also asked the names of other members of the SFDA. Her belongings and passport were confiscated, and she was released after four to five hours of detention. Many of her belongings were never returned to her, and she retrieved her passport over two weeks later, after repeated attempts to regain it. In the course of her repeated efforts to regain her passport, officials at the airport demanded still more information about the composition of the membership of the SFDA, and they advised Osman to disassociate from the organization. Later, after returning her passport, government officials refused to let Osman leave the country to return to Saudi Arabia. Osman was given clearance to leave Sudan only after her sister, who worked at the airport, successfully bribed an official there.

United States State Department documents show that indeed an organization called the National Democratic Alliance ("NDA") has been enmeshed in conflict with the Sudanese government for some time. Documents submitted by Osman suggest that SFDA is an affiliate of the NDA. The strife between the government and the NDA includes armed clashes, which have led to the deaths of NDA and Sudanese soldiers, along with civilians who were close to the fighting. NDA activists and demonstrators have been subjected to extended detentions by the government. Several activists, including high-ranking attorneys and international representatives of the NDA were charged with treason and placed in indefinite detention, without being formally tried or convicted. Pro-NDA journalists were also briefly detained by the government. Riot police, using tear gas and violence disrupted a pro-NDA rally, which resulted in the injury and temporary detention of many. The State Department report concludes that Sudan considers the NDA to be at war against it. For the purpose of our analysis, we assume the truthfulness of Osman's testimony.

---

1. We have jurisdiction pursuant to 8 U.S.C. § 1252(b).

## II.

The INS employs a two-prong test in evaluating asylum cases. The first prong is subjective: the asylum-seeker must show that he or she personally has a reasonable fear of persecution. The objective portion of the test for fear of persecution contains four elements: 1) whether the applicant possesses or is believed by the persecutor to possess a characteristic which the persecutor seeks to overcome by means of persecution; 2) whether the persecutor is aware, or could become aware, that the applicant possesses the belief or characteristic; 3) whether the persecutor has the capability of punishing the applicant; and 4) whether the persecutor has the inclination to punish the asylum-seeker. *See Matter of Mogharrabi*, 1987 BIA LEXIS 5, at *17–18 1987 WL 108943. The BIA's findings as to the existence of a fear of persecution are accorded substantial deference by the courts of appeals: "[T]he BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483–484 (3d Cir.2001). In this case, the BIA affirmed the IJ's decision without opinion under 8 C.F.R. § 3.1(a)(7), making it the final agency determination. Thus, we must review the decision of the IJ.

### A.

An applicant for asylum must show that s/he is unable or unwilling to return to his/her country of nationality or habitual residence "because of past persecution or because of a well-founded fear of future persecution on account of [a petitioner's] race, religion, nationality, membership in a particular social group, or political opinion." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir.2002). Past persecution includes any past incidents that rise to the level of persecution by the government, or by government-condoned forces. Osman does not argue that she was persecuted in the past but limits her claim to fear of persecution in the future.

With respect to the subjective test, Osman must show that she has a genuine fear of future persecution. *See id.* Osman testified that she feared going back to the Sudan because of her political affiliation. The IJ found Osman to be a credible witness. We do not doubt that Osman's fear of future persecution is subjectively genuine.

### B.

As to the objective part of the test, Osman's recent experiences demonstrate that Sudan, although clearly displeased by her political affiliation, is presently unwilling to resort to persecution to persuade her to resign her membership. After revealing her affiliation with the SFDA, Osman, although denied for over 50 days the right to leave Sudan, was not subjected to any other harms that might adumbrate future persecution. The IJ also noted that her father, also a supporter of SFDA, has lived peacefully in Sudan for his entire life. In addition, the State Department report showing the conflict between the NDA and the Sudanese government is insufficient to save Osman's petition. The report shows hostility toward the NDA, manifested primarily as military attacks on the NDA and detention of NDA activists who were engaged in conspicuous party activism. But Osman has not shown herself to be either a combatant or an activist. Although she is a member and low-level officer in the SFDA, the evidence does not show that her particular role in the group provides a basis on which the Sudanese government

would persecute her. Moreover, to the extent that the Sudanese government has targeted SFDA members for persecution, any inclination to persecute Osman in particular on that basis is belied by her release from detention by the Sudanese government, permitting her to live peacefully upon learning of her affiliation, and the reissuance of her passport. Under these circumstances, we cannot say that the evidence compels an outcome contrary to that reached by the IJ.[2]

Accordingly, the order of the Board of Immigration Appeals will be affirmed and the petition for review will be denied.[3]

---

2. Osman argues that the BIA's grant of asylum to three of her children militates in favor of her admission, because their circumstances are similar to hers and lend credibility to her asylum claims. The Government correctly notes that, in immigration cases, we may not consider evidence not contained on the administrative record. *See* 8 U.S.C. § 1252 ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based."). Osman's children were granted asylum after her final order of deportation, and their cases are not part of the administrative record. Thus we are constrained to ignore them. Moreover, the records of their hearings and the reasons for the grants of asylum are unclear, and thus it would be impossible to extrapolate from their cases to reach any conclusions regarding Osman, even were we allowed to consider that asylum was granted to them.

3. We decline to reach the issues raised in this case by the Amicus, American Immigration Law Foundation. Amicus argues that the summary affirmance procedure prescribed in 8 C.F.R. § 3.1(a)(7) violates principles of administrative law and Fifth Amendment due process. However, these issues were not meaningfully raised by Osman in her briefs. " '[N]ew issues raised by an amicus are not properly before the court' in the absence of exceptional circumstances." *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 266 (3d Cir.2001) (quoting *General Engineering Corp. v. Virgin Islands Water and Power Authority*, 805 F.2d 88, 92 n. 5 (3d Cir. 1986)). We find no exceptional circumstances to be present in this instance, because the issues addressed by Amicus, although of considerable public import, are likely to be raised soon hereafter in other proceedings where the issue may be addressed more fully by the direct parties to the case.